IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JUDI W.,[1] | Case No. 3:20-cv-00994-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

**BECKERMAN, U.S. Magistrate Judge.**

Judi W. ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 405(g), and all parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, the Court affirms the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

**I.    PLAINTIFF'S APPLICATION**

Plaintiff was born in December 1958, making her fifty years old on December 9, 2008, her amended alleged disability onset date.[2] (Tr. 42, 49, 910-11, 920.) Plaintiff has a high school

---

[2] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 07-cv-01016, 2008 WL 4490024, at *4 n.3 (E.D. Cal. Sept. 30, 2008). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.*

education and past work experience as a customer service supervisor. (Tr. 127, 919.) In her application, Plaintiff alleged disability due to chronic obstructive pulmonary disease ("COPD"), kidney disease, arthritis, osteoporosis, migraines, hypothyroidism, and left lung tumors. (Tr. 42, 49, 126.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on November 30, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 910.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on March 15, 2017. (Tr. 26-40.) On June 15, 2017, the ALJ issued a decision denying Plaintiff's application. (Tr. 7-22.) On April 17, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-6.) Thereafter, Plaintiff filed an appeal seeking judicial review of the ALJ's decision.

On July 18, 2019, this Court reversed the Commissioner's decision and remanded Plaintiff's case for further proceedings. *See Judi W. v. Saul*, No. 3:18-cv-01056-SB, 2019 WL 3237513, at *10-12 (D. Or. July 18, 2019) (holding that the ALJ committed harmful error by failing to address David Hindahl, M.D.'s ("Dr. Hindahl") opinion, and remanding for further proceedings to allow the ALJ to address Dr. Hindahl's opinion).

///

///

---

(citations omitted). Thus, Plaintiff's date last insured of December 31, 2008 (*see* Tr. 911) reflects the date on which her insured status terminated based on the prior accumulation of quarters of coverage. If Plaintiff established that she was disabled on or before December 31, 2008, she is entitled to DIB. *See Truelsen v. Comm'r Soc. Sec.*, No. 2:15-cv-02386, 2016 WL 4494471, at *1 n.4 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))).

Plaintiff and a VE appeared and testified at a second administrative hearing on February 4, 2020. (Tr. 929-37.) On February 21, 2020, the ALJ issued a decision denying Plaintiff's application. (Tr. 910-21.) This appeal followed.

## II. THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

### III. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 910-21.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 9, 2008, her amended alleged onset date. (Tr. 913.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "[A]nxiety and a history of nephrolithiasis[.]" (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 914.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, but is "limited to simple, repetitive, [and] routine tasks."[3] (Tr. 916.) At step four, the ALJ concluded that Plaintiff was unable to perform her past relevant work as a customer service supervisor. (Tr. 919.) At step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, including work as an electrical assembler, production line solderer, and marker. (Tr. 920-21.)

### DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by failing to: (1) provide specific and legitimate reasons for discounting the opinion of Plaintiff's treating physician, Dr. Hindahl; (2) account for Plaintiff's kidney-related limitations in formulating Plaintiff's RFC; and (3) present a hypothetical question to the VE that accounted for all of Plaintiff's credible limitations. (Pl.'s Opening Br. at 15-17.) As explained below, the Commissioner's decision is free of harmful legal error and supported by substantial evidence. Accordingly, the Court affirms the Commissioner's decision.

---

[3] The ALJ originally concluded that Plaintiff had the RFC to perform "a full range of work at all exertional levels," but limited to "simple, repetitive, routine tasks." (Tr. 15.)

PAGE 5 – OPINION AND ORDER

I.   MEDICAL OPINION EVIDENCE

   A.   Applicable Law[4]

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "Where a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002)). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "'The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.'" *Id.* (quoting *Reddick*, 157 F.3d at 725). That is to say, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis

---

[4] The new regulations governing the evaluation of medical opinion evidence do not apply here because Plaintiff filed her application before March 27, 2017. *See generally Robert S. v. Saul*, No. 3:19-cv-01773-SB, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021) (addressing the new regulations that apply to Social Security applications filed on or after March 27, 2017).

for his conclusion." *Id*. at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

B. Analysis

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Hindahl's opinion. (Pl.'s Opening Br. at 15.) The Court disagrees.

1. Dr. Hindahl's Opinion

On January 15, 2016, Dr. Hindahl completed a questionnaire that he received from Plaintiff's counsel, which asked Dr. Hindahl to address Plaintiff's impairments and work-related abilities as of "or before" December 31, 2008, Plaintiff's date last insured. (Tr. 809-19, 911.) Dr. Hindahl reported that he "first met" Plaintiff in July 2006; Plaintiff's diagnoses include medullary sponge kidney disease, COPD, chronic back pain, arthritis in her left knee, and panic disorder; Plaintiff's symptoms include shortness of breath and recurrent pain from kidney stones, chronic back pain, and arthritis; and Plaintiff's progression "for recovery to normal [was] poor." (Tr. 814.)

Dr. Hindahl added that Plaintiff's condition was expected to degenerate or deteriorate over time; Plaintiff would experience "substantial difficulty" with stamina, pain, or fatigue if she worked full-time; Plaintiff would need to work at a reduced pace if she worked full-time; and Plaintiff's ability to work full-time and maintain a "normal work pace" was "[v]ery [p]oor." (Tr. 814.) Additionally, Dr. Hindahl opined that Plaintiff's symptoms would frequently interfere with her ability to maintain attention and concentration; Plaintiff would need to change position or posture "more than once every two hours"; Plaintiff would need to be able to shift at will from sitting or standing/walking; Plaintiff's impairments or treatment would cause her to miss work at

least four times a month; and Plaintiff has been "continuously unable to work [since] 2012." (Tr. 818.)

### 2. The ALJ's Decision

The ALJ assigned "little weight" to Dr. Hindahl's opinion. (Tr. 918.) The ALJ provided five reasons for discounting Dr. Hindahl's opinion. (*See* Tr. 918.) Although the Court agrees with Plaintiff that the ALJ erred with respect to at least one of his reasons, any error was harmless because the ALJ provided a specific and legitimate reason for discounting Dr. Hindahl's opinion.

#### a. Plaintiff's Reported Activities

The ALJ discounted Dr. Hindahl's opinion based on Plaintiff's "wide variety of daily activities," which the ALJ explained "involve[d] caring for several grandchildren and [a] disabled brother." (Tr. 918; *see also* Tr. 917, the ALJ emphasized that Plaintiff reported she was "responsible for caring for her [granddaughter] full-time," Plaintiff's granddaughter suffers from cancer, and Plaintiff cared for her disabled brother, all of which undermined Plaintiff's claim of disability, and cited the portion of the Court's July 18, 2019 Opinion and Order that relied on these activities to affirm the ALJ's discounting of Plaintiff's testimony). This was a specific and legitimate reason for discounting Dr. Hindahl's opinion. *See Phelps v. Berryhill*, 714 F. App'x 628, 630 (9th Cir. 2017) ("The ALJ also discounted [the physician's] opinion because it was inconsistent with [the claimant's] stated ability to sustain certain activities, which is itself a specific and legitimate reason to discount a treating physician's opinion.").

Although the Court previously affirmed the ALJ's discounting of Plaintiff's testimony based on her reported activities, *see Judi W.*, 2019 WL 3237513, at *7-8, Plaintiff argues the ALJ erred in discounting Dr. Hindahl's opinion based on those same activities. In support of this argument, Plaintiff asserts that the ALJ is "attempting to find a back door to reject Dr. Hindahl's

PAGE 8 – OPINION AND ORDER

opinion as based on [Plaintiff's] subjective complaints," even though Dr. Hindahl's opinion is "substantially different than [Plaintiff's] testimony" and Dr. Hindahl relied on clinical findings, including abnormal imaging. (Pl.'s Opening Br. at 14-15.) Plaintiff also argues that the ALJ's reliance on her activities was misplaced because the ALJ did not identify any inconsistencies between her activities and Dr. Hindahl's opinion, and none of her activities "indicate capacities that are transferable to a work setting." (Pl.'s Reply Br. at 6-7.)

The Court finds that the ALJ did not err by discounting Dr. Hindahl's opinion based on Plaintiff's activities. The ALJ's decision expanded on his prior discussion of Plaintiff's activities, and acknowledged the Court's conclusion that the ALJ had reasonably relied on Plaintiff's activities to discount Plaintiff's symptom testimony. (*Compare* Tr. 15-18, *with* Tr. 916-18.) The ALJ then concluded that Plaintiff's activities were inconsistent with the "severity" of Dr. Hindahl's opinion, which reflected a finding of complete disability. (Tr. 918; *see also* Tr. 818, Dr. Hindahl opined that Plaintiff would miss work more than four times a month; Tr. 935, the VE testified that missing more than "six to eight days [of work] per year" would prevent a hypothetical worker from sustaining gainful employment). The Court concludes that discounting Dr. Hindahl's opinion on the ground that Plaintiff's activities were not consistent with a finding of complete disability was a specific and legitimate reason supported by substantial evidence in the record.[5] See *Jeanmarie W. v. Berryhill*, No. 6:18-cv-01109-MC, 2019

---

[5] Contrary to Plaintiff's argument (Pl.'s Reply Br. at 7), the record includes sufficiently specific details about Plaintiff's caregiving activities. (*See* Tr. 191, September 2004, Plaintiff was "raising" her four-year-old "granddaughter who [was] terminally ill"; Tr. 414, May 2007, Plaintiff reported that she was the "primary caretaker during the day for her granddaughter"; Tr. 405, May 2008, Plaintiff was "taking care of [her] granddaughter . . . [who] has many appoint[ments]"; Tr. 387, July 2009, Plaintiff was "instrumental in her support for her granddaughter"; Tr. 371, May 2010, Plaintiff was staying with her granddaughter "most of the time" during hospital treatment; Tr. 366, September 2010, "Patient is [the] caretaker of [a] granddaughter with severe illness."; Tr. 291, March 2012, Plaintiff complained about the stress

WL 4039621, at *4 (D. Or. Aug. 27, 2019) ("[T]he ALJ found Dr. Shireman and Mr. Warner's opinion that Plaintiff was completely disabled [was] inconsistent with the longitudinal record of Plaintiff's activities[.] . . . It was reasonable for the ALJ to infer from Plaintiff's demanding activities such as caring for her mother and daughter conflicted with the medical opinion that she was completely incapacitated[.]"); *Witt v. Colvin*, No. 6:14-cv-01338-SI, 2016 WL 1417382, at *7 (D. Or. Apr. 11, 2016) ("The ALJ also noted that Dr. Reforma's March, 2014 opinion was undermined by evidence of Plaintiff's [reported] activities. . . . Although the ALJ's conclusion that these activities were inconsistent with Dr. Reforma's opinion that Plaintiff was completely disabled may be subject to debate, it was rational."); *see also Thommen v. Colvin*, No. 12-01625-SI, 2013 WL 5819099, at *7 (D. Or. Oct. 29, 2013) ("[T]he ALJ 'need not consider whether a claimant's daily activities are equivalent to full-time work; it is sufficient that the claimant's activities 'contradict claims of a totally debilitating impairment.'") (citation omitted).

### b. The ALJ's Remaining Reasons

Having concluded that the ALJ provided a specific and legitimate reason for discounting Dr. Hindahl's opinion, the Court does not address the ALJ's four additional reasons for discounting the opinion. *See Gilliland v. Saul*, 821 F. App'x 798, 799 (9th Cir. 2020) (noting that an ALJ's errors are harmless if the ALJ "provided at least one valid reason" for discounting the evidence) (citation omitted); *see also Brendan J.G. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-cv-742-SI, 2018 WL 3090200, at *10 (D. Or. June 20, 2018) ("[B]ecause the ALJ gave at least one

---

of caring for her granddaughter and trying to "care for a disabled brother"; Tr. 274, December 2012, Plaintiff reported that she was the "full-time" caregiver for her granddaughter; Tr. 244, August 2013, Plaintiff reported that she adopted her granddaughter at an unspecified time; Tr. 210, September 2014, Plaintiff was "responsible for caring for her [granddaughter] full-time" because she suffered from significant health issues, including impaired eyesight, and lived with Plaintiff "most of the time"; Tr. 1160, August 2019, Plaintiff continued to serve as the "primary caregiver to [her] granddaughter who . . . is always needing to have some sort of treatment or surgery"; *but cf.* Tr. 149, April 2015, Plaintiff denied that she was the caregiver for "a wife/husband, children, grandchildren, parents, friend, [or] other").

PAGE 10 – OPINION AND ORDER

specific and legitimate reason for discounting Dr. Richardson's opinion, the Court upholds the decision to do so."); *Hoge v. Berryhill*, No. 16-cv-00718-AC, 2017 WL 4881586, at *9 (D. Or. Oct. 27, 2017) ("[B]ecause the ALJ provided at least one specific and legitimate reason, supported by the evidence, to accord little weight to Dr. Freed's medical opinion, the ALJ did not err in doing so.").

## II. THE ALJ'S RFC AND VE HYPOTHETICAL

Plaintiff also argues that in formulating her RFC and the dispositive VE hypothetical derived therefrom, the ALJ committed reversible error because the VE hypothetical did not include all of her credible limitations, namely, functional "limitations similar to those opined by Dr. Hindahl," which stem from Plaintiff's kidney disease and sciatica/back pain. (Pl.'s Opening Br. at 16-18.)

### A. Applicable Law

"In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony [and other record evidence] and translating the claimant's impairments into concrete functional limitations." *John L. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-cv-00106-SB, 2021 WL 1612296, at *3 (D. Or. Apr. 26, 2021) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174-75 (9th Cir. 2008)). "Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE." *Leroy M. v. Comm'r, Soc. Sec. Admin.*, No. 6:18-cv-0632-HZ, 2019 WL 4276996, at *6 (D. Or. Sept. 10, 2019) (quoting *Rhinehart v. Colvin*, No. 2:15-cv-01704-AC, 2016 WL 7235680, at *12 (D. Or. Dec. 12, 2016), and citing *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001)).

///

///

B.  Analysis

Based on the Court's conclusion that the ALJ's evaluation of Dr. Hindahl's opinion is supported by substantial evidence, and the Court's prior conclusion that the ALJ did not err in discounting Plaintiff's symptom testimony, there is no basis for concluding that the ALJ's RFC and VE hypothetical omitted any credible limitations. Accordingly, the ALJ did not err at step five.

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 6th day of July, 2021.

*Stacie F. Beckerman*
_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge